PRESIDENT, DIRECTORS, &c. OF THE AMERICAN BANK
& others *vs.* HENRY F. BAKER & others.

Where the holder of a note which, by the terms thereof, has been due more than six years, brings a suit on a sealed instrument in which he and the defendant had agreed that payment of the note should be postponed for a certain time, and that it should afterwards be paid on certain conditions, the statute of limitations is not a bar to such suit.

A vote of a corporation, which affects the liability of those of its members who are its debtors, cannot be regarded as consented to by them, if they were not present at the meeting at which the vote was passed, although they had legal notice of the meeting.

A. gave notes to several banks for the amounts which he owed them respectively, and also gave them collateral security of two classes ; the first class consisting of notes given for debts due to A., and the second class consisting of notes made, indorsed or guarantied by B. for the accommodation of A.: By an indenture, executed by A., B. & C., and by said banks, A. assigned all his property, including choses in action, to C. in trust to pay said banks : By the terms of the indenture, the banks were authorized to use their discretion in collecting said notes of the first class, and were to apply the proceeds thereof, when collected, towards the discharge of A.'s debts to the banks : It was also provided in said indenture, that said notes of the second class might remain in the possession of the banks, as collateral security, and not be collected until C. should have made a final disposition of the assigned

property, and have distributed the proceeds thereof among said banks: The banks, with the consent of A. and C., but without the consent of B., made a composition, in good faith, with several of the makers of said notes of the first class, so that a balance remained due from A. to said banks, after the proceeds of the property assigned by him had been paid to them; whereas if said notes had been collected in full, the banks would have been fully paid. *Held*, on a bill in equity brought by the banks against B., that they had discharged him, to the extent of the sums given up by the said composition, from his liability on the notes of the second class.

THIS was a bill in equity, brought by the American Bank, the Atlantic Bank and the City Bank, in which relief was sought against the defendants on the stipulations and covenants contained in an indenture dated December 16th 1829. The parties to this indenture were the Saco Manufacturing Company, of the first part ; Henry F. Baker & others, trustees, of the second part ; the plaintiffs, and the Globe and Saco Banks, of the third part ; and Robert Waterston & others — who had signed, accepted, indorsed or guarantied certain paper, mentioned in said indenture, for the accommodation of said Saco Manufacturing Company — of the fourth part.

The facts of the *case which was decided* by the court, as they were submitted upon the plaintiffs' bill, the defendants' answers, and the report of a master, were these : On the 16th of December 1829, the Saco Manufacturing Company, (a corporation established by law, in the State of Maine,) were indebted to the several plaintiffs, and to the Globe Bank and Saco Bank, respectively, in large sums which were liquidated on that day, and a note given by said company to each of said banks for the full amount due to each ; and said company, by the indenture abovementioned, assigned to the parties of the second part, (Baker & others,) as trustees, all the real and personal property, notes of hand and other choses in action, belonging to said company, as security for the payment of the notes so as aforesaid given by said company to said banks, with power to said trustees to sell the assigned premises and reduce the same to money, in the manner prescribed in said indenture, and to appropriate the proceeds, after deducting charges, &c. to the payment of said notes.

The said banks at that time respectively held sundry notes

and obligations, as collateral security for the payment of the sums due to them from said Manufacturing Company ; which security was of two classes : One consisted of notes and obligations, given by the promisors for shares in said company, or for debts originally due to the company. These were specified, in the schedules annexed to said indenture, as *the first class.* The notes and obligations, which constituted *the second class* in said schedules, were notes, &c. made, indorsed or guarantied by the parties thereto, (viz. the defendants, Waterston & others, parties of the fourth part to said indenture,) for the accommodation of said company. All the notes, &c. of this second class were payable, by the terms thereof, on or before the 15th of June 1830 ; and all the makers, indorsers or guarantors thereof, (viz. the said Waterston & others,) were members of said Manufacturing Company.

The said indenture contained the following stipulation respecting said notes, &c. specified in the schedules annexed thereto : " And as to the notes and obligations, held by the said banks as collateral security for the debts aforesaid, it is hereby agreed by said parties, that the parties of the third part," (the said banks,) " may use their discretion in collecting from the promi sors the contents of such of the notes of hand, held by them respectively as aforesaid, as were given by the said promisors thereof for stock or shares in the said manufacturing corporation, or for debts originally due to the said corporation, as specified in the schedules hereto annexed, or may renew the same, from time to time, at their pleasure, and will place the actual proceeds, when collected, deducting necessary expenses of collection, to the credit of said company, and in diminution of their respective debts and demands against the company : But in case of renewal, the renewal note is to be held as collateral security, in place of the note taken up. And the said banks may also use their discretion in collecting from the promisors or indorsers of any other notes, or the guarantors of any other obligations held by said banks, in like manner, the amount due by said securities, unless the indorsers and guarantors thereof, or their assigns, if required, shall respectively consent and agree -

as all do, who become parties hereto — that the said paper may remain in possession of the bank now holding the same as collateral security for the said debt of the Saco Manufacturing Company ; in which case, the said parties of the third part," (the said banks,) "shall and will forbear to collect and recover the same, until the said parties of the second part," (Baker & others, trustees,) "shall have made a final disposition of said property, and paid and distributed the same among the creditors," (the said banks,) "parties of the third part. *Provided,* however, that the said forbearance shall not exceed the term of five years : *Provided also,* that all the promisors, indorsers and guarantors of any security made, indorsed or guarantied for the accommodation of said company, and hereby made and declared to be collateral to either of the said company's notes of this date, who shall consent to the aforesaid arrangement for forbearance, shall, at the expiration of five years, each be held responsible for such proportion only of the amount of such security, as the amount then unpaid of the Saco Company's note, to which said security is collateral, bears to the whole amount of said note."

The parties of the second part to said indenture, (Baker & others,) took possession of the assigned property, reduced it to money, and appropriated the money, after deducting their expenses and charges, to the payment of the several debts due to the said banks ; but the payments so made were not sufficient to discharge said debts in full, by reason of the compositions, hereinafter mentioned, which were made with the debtors of said Manufacturing Company, whose notes, &c. to said company were specified as *the first class,* in the schedules annexed to said indenture. The plaintiffs therefore claimed of the parties of the fourth part to said indenture, (Waterston and others,) the balance that should be found due to the plaintiffs upon a just settlement of the accounts of said trustees, (Baker & others,) who, as the plaintiffs alleged in their bill, had retained an unreasonably large sum, as compensation for their services.* This claim

---

* The said trustees, in their answer, set forth their proceedings in the execution of their trust, and annexed their accounts thereto. The master reported

was made on said defendants solely upon their alleged liability as parties to the accommodation paper before mentioned, which was specified as *the second class,* in the aforesaid schedules.

At a legal meeting of the Saco Manufacturing Company, held at Saco, on the 13th of March 1830, pursuant to previous notice published in the Boston Courier, and Maine Democrat, and agreeably to a request of a majority of the directors, it was voted, that the trustees in said indenture, (Baker & others,) " be authorized to compromise and discharge in full all persons indebted to said corporation, upon payment of such portion of their demand, as may be judged reasonable by said trustees, and to surrender the notes, or other evidences of such debt or debts, upon payment of any such portion ; provided, that no such compromise or discharge shall be made or be effectual, unless agreed to in writing by said trustees :  And that the several banks, parties to said indenture, be respectively authorized to compromise and discharge, without prejudice to their rights to claim of the company their whole debt, all persons indebted, or liable by indorsement, acceptance or otherwise, to pay said corporation, on any paper held by said banks, respectively, as collateral security under said indenture, upon payment of such sum as the bank holding such paper may judge reasonable, and surrender such notes, or vacate such indorsement or acceptance, or do such other act as may be necessary to discharge such person ; provided that no such compromise or discharge shall be made or be effectual unless assented to in writing by all said trustees."

The defendants, (Waterston & others,) did not attend said meeting of the company, nor is there any evidence that they assented to said vote, or had any legal notice thereof until after the proceedings of said trustees hereinafter next stated.

After the passing of said vote by said company, the banks that were parties of the third part to said indenture, with the written consent of the trustees aforesaid, gave up, on comprom-

that these accounts, including the trustees' charges, &c. ought to be allowed in full; and the defendants, (Waterston & others,) waived all exceptions to this part of the master's report.

ise, portions of various debts due to said company, (which were enumerated in *the first class* of the schedules aforesaid, and were held by said banks as collateral security,) to an amount exceeding the balances which were due to said banks from said company on the 20th of June 1840, when the plaintiffs' bill was filed. Said compromises were made in good faith, and on due consideration of the circumstances of each case.

It was agreed by the plaintiffs and the defendants, (Waterston & others,) that if, on the foregoing facts, the court should be of opinion that said defendants are liable for the amount of the balances due to the plaintiffs, or either of them, the master should ascertain the amounts for which said defendants are respectively liable ; otherwise, that the plaintiffs' bill, as against said defendants, should be dismissed with costs.

*W. J. Hubbard*, for the defendants, Waterston & others. These defendants sustained to the plaintiffs the relation of sureties for the Saco Company, on the notes of *the second class*, mentioned in the indenture. And the evident intent of the parties to the indenture was, that the assigned property and the notes of the first class should be applied in satisfaction of the plaintiffs' debts, before the defendants should be called on to contribute. The mere fact that the notes of the second class were accommodation notes, and known to be such by the holders when they received them, places the defendants in the position of sureties, and entitles them to the benefit of the rules of law which protect sureties. *Laxton* v. *Peat*, 2 Campb. 185. The decision in that case, though questioned in *Fentum* v. *Pocock*, 5 Taunt. 192, has been repeatedly recognized. See *Adams* v. *Gregg*, 2 Stark. R. 531. *Ex parte Glendinning*, 1 Buck's Bankr. Cas. 517. *Collott* v. *Haigh*, 3 Campb. 281. The defendants were therefore entitled to stand in the place of the plaintiffs, as to all securities, funds, liens and equities, which the plaintiffs might have had against other persons or property on account of the debts of the Saco Company. 1 Story on Eq. §§ 499, 501, 502. *Stevenson* v. *Austin*, 3 Met. 484, 485.

The plaintiffs, by making compositions with the parties to the notes of *the first class*, without these defendants' consent, and

without any authority conferred by the indenture, have thereby discharged the defendants. *Mayhew* v. *Crickett*, 2 Swanst. 185. *Cheesebrough* v. *Millard*, and *Stevens* v. *Cooper*, 1 Johns. Ch. 414, 430. *Hayes* v. *Ward*, 4 Johns. Ch. 130. *Boultbee* v. *Stubbs*, 18 Ves. 20. *Cowper* v. *Smith*, 4 Mees. & Welsb. 519. *Capel* v. *Butler*, 2 Sim. & Stu. 457. Theobald on Prin. & Surety, §§ 218, 219.

The defendants do not deny that a creditor, who executes a deed of composition with his principal debtor and part of the sureties, *may reserve* his remedy against the other sureties. 1 Buck's Bankr. Cas. 517, 560. *Nichols* v. *Norris*, 3 Barn. & Adolph. 41, *note.*

The statute of limitations is a bar to the plaintiffs' bill. The stipulation in the indenture, as to delay, was merely a consent that an extension might be granted on the business paper, and a waiver of the discharge of the defendants, which would have been the effect of an extension given without their consent. The covenant not to sue for five years was not a bar to a suit within that time. When the statute once attaches, it continues to run. *Harvey* v. *Tobey*, 15 Pick. 99.

*Hillard*, for the plaintiffs. Admitting that a suit at law on the notes would be barred by the statute of limitations, yet this suit in equity on the indenture is not barred. *Belknap* v. *Gleason*, 11 Connect. 160. Even if the new agreement, which was made by indenture, had not been under seal, the statute would not avail the defendants. And if this suit had been brought on the notes, a court of equity would interfere to prevent the statute bar. 2 Story on Eq. § 1521.

The notes may be regarded as merged in the contract, made by indenture, concerning the time and amount of payment. Cro. Car. 415, per Croke, J. *Banorgee* v. *Hovey*, 5 Mass. 25, 40, & Rand's *notes. Kimball* v. *Tucker*, 10 Mass. 192. If they were not thus merged, yet the plaintiffs may resort to the indenture, as an independent agreement. 11 Connect. *ubi sup. Cotterel* v. *Hooke*, 1 Doug. 97. And to a suit on such agreement, the statute of limitations is no bar : Clearly not, unless by a true construction of the agreement the defendants were not

to be held more than six years after the maturity of the notes. But the terms of the indenture, and the reasons for making it, forbid such a construction.   And if the construction were doubtful, the indenture must be taken most strongly against the guarantors.   *Hargreave* v. *Smee*, 6 Bing. 248.

This is not a case of principal and surety, as is assumed by the defendants, but of co-sureties.   The parties to all the notes, held by the plaintiffs as collateral security, were sureties to the plaintiffs for the Saco Company ; and the plaintiffs, if there had been no agreement to the contrary, might have called upon any of them for payment at maturity.   The plaintiffs were not bound, either by the terms of the indenture, or by the principles of equity, to apply the proceeds of the notes of *the first class*, when collected, for the relief of the defendants.   But such application has, in effect, been made.   The compromises were made *bonâ fide* and judiciously ; and the defendants do not show what their defence requires, viz. that they have thereby been injured.   *Perfect* v. *Musgrave*, 6 Price, 111.

None of the cases cited for the defendants shows that they are discharged by the compositions made by the trustees and the plaintiffs.   *Laxton* v. *Peat*, 2 Campb. 185, has been overruled, or is at least of doubtful authority, even in England, and has never been recognized as law by this court.   1 Barn. & Adolph. 703, per Lord Tenterden.   10 Barn. & Cres. 584, per Parke, J.   *Harrison* v. *Courtauld*, 3 Barn. & Adolph. 36.   *Bank of Montgomery* v. *Walker*, 9 S. & R. 229 ; 12 S. & R. 382. *Carstairs* v. *Rolleston*, 5 Taunt. 551.*

The defendants may be considered as having assented to the compositions, as they were members of the corporation, and had legal notice of the meeting at which the same were authorized by a corporate vote.

*C. G. Loring*, in reply.   It is not material, in the present case, whether the defendants are to be regarded *at law* as sureties to the plaintiffs for the Saco Company, merely on the ground taken in the case of *Laxton* v. *Peat*.   That may be a

---

* See Story on Bills, 295, 510, and *notes*.   *White* v. *Hopkins*, 3 Watts & Serg. 99.

doubtful question. It might, perhaps, be sufficient for the defendants that the doctrine of that case prevails *in equity.* 1 Buck's Bankr. Cas. 517. But the defendants further contend that the plaintiffs *have agreed* to consider the defendants as sureties, and that they are therefore discharged by the compositions made by the plaintiffs. Theobald on Prin. & Surety, § 216. This agreement is shown by these facts : The indenture stated that the notes signed, &c. by the defendants were accommodation paper ; it provided that they might remain uncollected for five years, and until the other notes should be paid ; and that the defendants should not be liable at all, except for a balance, if all the other notes and property should be insufficient.

The indenture, by expressly authorizing only a *renewal* of the business paper, impliedly prohibited a composition. *Expressio unius est exclusio alterius.* And the defendants, though they were members of the Saco Company, cannot be considered as having assented to a composition, by reason of the vote of the company at a meeting at which they were not present.

The statute of limitations is as obligatory in a court of equity as in a court of law. 2 Story on Eq. § 1520. *Farnam v. Brooks,* 9 Pick. 243.

WILDE, J. The plaintiffs' claim, as stated in the bill, is founded on an indenture, bearing date December 16th 1829, between the Saco Manufacturing Company, of the first part, Henry F. Baker and others, trustees, of the second part, the plaintiff banks, and the Globe and the Saco Banks, of the third part, and Robert Waterston and others, who had signed, accepted, indorsed, or guarantied certain paper mentioned in the schedule annexed to the indenture, for the accommodation of the Saco Company, of the fourth part. The claim now to be de termined is that which is made on Robert Waterston and others, the parties last named in the indenture. They deny their liability and rely on two grounds of defence. The *first* is, that this suit is barred by the statute of limitations : And *secondly,* they contend that they are discharged from all liability to the plaintiffs for the balance due to them from the Saco Manufacturing Company, because the plaintiffs have given up, by way

of composition, certain notes and obligations which they held as collateral security for their debts against the said Manufactur ing Company, exceeding in amount the balance now due to them from said company ; and that said notes and obligations, by the true construction of the indenture, ought to have been applied to the payment of the plaintiffs' demands against said company ; and that the defendants, parties of the fourth part to said indenture, were liable only for the balance which might remain due, if any, after such application.

As to the first ground of defence, we think it very clear that the statute of limitations is no bar to the present suit, which is founded on the indenture ; and it is quite immaterial whether the notes and obligations held by the plaintiffs, as collateral security, are barred by the statute or not. These notes and obligations were modified, as to the time of payment and the amount to be paid, by the indenture ; and thus they may be considered as merged in that new contract. It is true also, as the plaintiffs' counsel has argued, that the statute of limitations would be no bar to an action on this new contract, although it had not been under seal ; as no action thereon would have accrued to the plaintiffs, until after the expiration of five years from the date of the contract. This point, however, is immaterial, as the new contract, on which the present suit is founded, is by indenture, under the seals of all the parties, so that un questionably the statute of limitations is no bar.

The only remaining question to be considered is, whether the plaintiffs have not discharged the defendants, against whom they now seek to enforce their claim, from all legal and equitable liability therefor, by giving up, by way of composition with the debtors of the Saco Manufacturing Company, certain notes and obligations, which they held as collateral security for the payment of their demands, and which ought to have been so applied — exceeding in amount the balance now claimed. This question struck us, at the argument, as being not free from doubt. No case precisely in point was then cited, or has been since found. The question, therefore, must be decided upon the general principles of equity, in relation to the conditional and limited liability of sureties.

15 *

It was argued for the defendants, that the notes and obligations, given up by the plaintiffs, were first to be applied to the reduction of their debts, and that the defendants were liable only for the balance which might remain due, if any, after such reduction ; and that if those notes and obligations had been collected and so applied, no balance would have remained due : That the defendants, having become liable as sureties for the said company, by indorsing or guarantying their paper for their accommodation, were entitled to the benefit of the notes and obligations given up by the plaintiffs to the debtors of said company ; and that, as they have been deprived of this benefit without their consent, they are, by the principles of equity and of law, discharged from their liability. On the other hand, it was argued for the plaintiffs, that the parties, to whom the notes and obligations were given up by the plaintiffs, were sureties of the said company. And they denied that the said securities were, by the terms of the indenture, or the principles of equity, to be collected and applied towards the payment and reduction of the plaintiffs' debts, for the benefit and relief of the defendants ; and if they were to be so applied, that they substantially had been : That the compromises of said claims had been made in good faith, and on due consideration of the circumstances of each case, and were beneficial rather than prejudicial to the defendants ; and if they were not so, it was incumbent on the defendants to make it appear.

We have considered these arguments ; and having examined and considered the provisions of the indenture, and the facts of the case, so far as they bear on the present question, we are of opinion, that by the terms of the contract and the principles of equity, the defendants must be considered as discharged from their liability.

In the first place, the parties to whom the plaintiffs surrendered the notes and obligations, which they held as collateral security, were not the sureties of the said Manufacturing Company. In no sense can they be considered as being in that relation. They were the debtors of the said company, and their notes and obligations were the property of the company, subject only to the plaintiffs' lien. They ought, therefore, to have been

collected, if practicable, and applied to the payment and reduction of the plaintiffs' debts, before they had any right to enforce their claims against the defendants, who were the mere sureties of the said company, having become liable for their accommodation. By the principles of equity and the express terms of the indenture, the plaintiffs were required to "place the actual proceeds" of said notes and obligations, "when collected — deducting necessary expenses of collection — to the credit of the said company, and in diminution of their respective debts and demands against the company." And the defendants, as sureties, were responsible only for the balance which might remain due after the said reduction, and after the appropriation of the proceeds of the other property of the company, assigned to the trustees for the payment of said debts. And by the principles of equity, where the creditor has the property of the principal, or collateral securities for his debt, the surety is entitled to the benefit of them in aid of his own responsibility, although there be no express contract to that effect. 1 Story on Eq. 592. The principle, as laid down by Theobald, in his treatise on the Law of Principal and Surety, § 174, appears to be well founded, and is sustained by the authorities cited. "If the creditor," he says, "parts with securities, or any fund which he would be entitled to apply in discharge of his debt, the surety becomes exonerated, at least to the extent of the value of such securities; because securities, which the creditor is entitled to apply in discharge of his debt, he is bound so to apply, or to hold them as a trustee, ready to be applied, should the surety desire it." So also, any neglect of the creditor, occasioning the loss of securities, to the benefit of which the surety is entitled, will *pro tanto* discharge the surety. *Capel* v. *Butler*, 2 Sim. & Stu. 457. It is true, that if the creditor holds several collateral securities for the same debt, he may compound with and discharge one of the parties liable, without exonerating thereby the parties liable on the other collateral securities. So the creditor may compound with the principal debtor, reserving his remedies on his collateral securities. But these rights of the creditor do not exist when the party sought to be charged is a surety; for the

surety is entitled to the benefit of all the securities which the principal gives to the creditor ; and of this benefit he cannot be deprived by the creditor, without his assent.

We are therefore of opinion, that by the principles of equity, and the provisions of the indenture, the defendants were entitled to the benefit of the securities given up by the plaintiffs, which neither they nor the trustees had, by the terms of the indenture, any right to compromise.

The plaintiffs' claim, which they now seek to enforce, is founded on the indenture ; and it is immaterial what were the rights and liabilities of the parties, prior to that contract. By its stipulations, the notes and obligations, which the plaintiffs held as collateral security against the debtors of the Manufacturing Company, were to be collected unconditionally, and the proceeds to be applied in discharge of the plaintiffs' demands, for the exoneration of the defendants. These securities were a part of the funds charged with these demands. The defendants were not to be responsible until five years after the date of the indenture, and then only for the balance which might remain due, after the other securities had been collected, and the proceeds applied to the reduction of the plaintiffs' debts. If therefore the securities, which were given up, could have been collected, it seems quite clear that the plaintiffs, by compounding with the parties responsible, have virtually discharged the defendants, who were under only a limited and conditional responsibility.

The plaintiffs' counsel, however, suggests that the defendants, Waterston and others, are bound by the vote of the Manufacturing Company, which authorized the said compromise. But we think it clear that they cannot be so bound, unless they assented thereto, and there is no evidence of such assent ; nor is there any evidence that they had legal notice of said vote until the compromise was made.

The plaintiffs' counsel also denies that these securities could have been collected. On the contrary he affirms, that the plaintiffs have, by their compromises with the debtors, obtained and credited, in reduction of their claims, all that could be obtained

on those securities ; that these compromises are *primâ facie* beneficial rather than prejudicial to the defendants ; and if not so, it is incumbent on the defendants to prove it ; it being reported by the master, that these compromises were made in good faith.   But it is not sufficient for the plaintiffs to prove they acted in good faith.   They might thus act, on the opinion that they were authorized to make the compromises with the consent of the  Saco Company, without consulting  the sureties · or they might think the compromises would be beneficial to the sureties.   But if they have in fact been prejudicial and not beneficial, the plaintiffs are clearly responsible, and must account for the securities at their nominal or real value.   And they are bound to prove all the facts and circumstances, in reference to which the compromises were made.   If these facts and circumstances should be proved, and it should thereupon appear that the defendants have not been, and cannot be prejudiced by the said compromises, then another question would be raised, namely, whether the plaintiffs would be bound to account for said securities at their nominal or real value.

It is a settled rule in equity, that if the creditor, by a binding agreement with the principal debtor, extends the time of payment, without the consent or privity of the surety, such an agreement will *ipso facto* discharge the surety, although the surety does not thereby sustain any injury, and although he may derive an actual benefit from the extension of the time of pay ment.   Chit. Con. (5th Amer. ed.) 529.  2 Keen, 644.  This rule, however, is founded on the consideration, that the extension of time is a new contract, to which the surety is not a party, and for the performance of which, therefore, he is not bound.   But this reason does not apply to a case where the creditor relinquishes securities, to the benefit of which the surety is entitled.   In such a case, the surety is not discharged absolutely, without regard to the value of the securities.   He is entitled only to be exonerated to the extent of the value of them. Whether the value is to be taken at the nominal amount, or is to be estimated under all the circumstances of the case, is a

question not raised by the facts agreed, and upon which, there fore, we give no opinion.

Upon the case stated, we are of opinion that the defendants are discharged, it being admitted that the securities, given up by the plaintiffs, exceed in amount the balance now claimed.

*Bill dismissed as to Waterston and others.*